```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK


UNITED STATES OF AMERICA        *     Case No. 20-CR-442(EK)
                                *
                                *     Brooklyn, New York
                                *     January 6, 2021
     v.                         *
                                *
BAIMADAJIE ANGWANG,             *
                                *
          Defendant.            *
                                *
* * * * * * * * * * * * * * * *

       TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
            BEFORE THE HONORABLE ERIC R. KOMITEE
                UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:            SCOTT ANDREW CLAFFEE, ESQ.
                               Asst. United States Attorney
                               United States Attorney's Office
                               271 Cadman Plaza
                               Brooklyn, NY 11201


For the Defendant:             JOHN FREDERICK CARMAN, ESQ.
                               666 Old Country Road
                               Garden City, NY  11530









Proceedings recorded by electronic sound recording,
transcript produced by transcription service.
```

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

1         (Proceedings commenced.)
2              THE CLERK:  Criminal cause for status conference,
3     the United States of America, vs. Angwang, docket no. 20-CR-
4     442.
5              Before I ask you all to state your appearances for
6     the record, there's a few things I'd like to go over.
7              These proceedings are public.  The recording and/or
8     rebroadcasting of them are not allowed. We're making an audio
9     recording of today's conference, so please identify yourself
10    each time you speak, speak slowly and mute your device when
11    you're to speaking to eliminate background noises.
12             Would you now please state your appearances for the
13    record, starting with the government.
14             MR. CLAFFEE:  Good morning.  Scott Claffee for the
15    United States.
16             THE COURT:  Good morning.
17             MR. CARMAN:  Good morning, Your Honor.  It's John
18    Carman for Mr. Angwang.
19             THE CLERK:  Mr. Angwang, are you still with us?
20             THE DEFENDANT:  Yes.  Yes, ma'am.
21             Good morning.  Baimadajie Angwang.
22             THE COURT:  Good morning.
23             THE CLERK:  That's it, judge.
24             THE COURT:  All right. Thank you.
25             We're here for a status conference in this case.  I

think at the last status conference the government had flagged that they might be producing some information that would implicate the Classified Information Procedures Act. We'll talk about that a bit this morning.

But let me just first begin by confirming with defense counsel that you and Mr. Angwang both consent to proceeding this morning telephonically rather than in person.

MR. CARMAN:  We do, Your Honor.

THE COURT:  Okay.  And I'll note that that I think it makes sense, given the continuing spread of the Coronavirus and the difficulties especially with transporting incarcerated defendants to trial, given the protocols that the MDC has in place to minimize the spread of this virus.

Mr. Claffee, why don't we start with the government.

What is the status of discovery in this case?

MR. CLAFFEE:  Good morning, Your Honor.  This is Scott Claffee for the government.

The government provided an initial batch of Rule 16 discovery before the holidays.  We're in the process of preparing a second batch that we'll hopefully get out in the next or two.

The government also extended a plea offer to counsel concurrently with the first batch of discovery.  We are currently working on finalizing our motion under the

Classified Information Procedures Act, section 2.  We expect to file that shortly.

We'll formally request a status conference for the purpose of discussing classified information and setting a motion schedule related to that, as well as supplementing and substantiating our previously orally made motion to have this case designated as complex.

So we've discussed dates just this morning with the defense for the next status conference on February 22nd and we would expect that status to both cover the information that we have to discuss related to CIPA, the Classified Information Procedures Act, as well as anything else we need to discuss related to scheduling.

THE COURT:  Okay.  I'll note that I think that the government had said at the last status conference that you expected to file the CIPA motion before today.

And I understand the holidays intervened, but given especially the fact that the defendant is currently incarcerated pending trial, I want to move this case with all deliberate speed.

So I would ask that you get that motion in as soon as you can.  When do you think you can have it to the court?

MR. CLAFFEE:  Hopefully by the end of this week, Your Honor.

We were trying to get it in so that we could

1   convert the status conference into the CIPA conference, but
2   we do need to be prepared at the CIPA status conference to be
3   able to discuss precisely what motions that need to be filed
4   and the timeframe that we think they can be completed in.
5            And to do that we're in the process of sorting out
6   which agencies, if any, have classified material and which
7   agencies we need to get things like head of agency
8   declarations from and such.
9            So we're tying up all of those loose ends and we'll
10  have that motion into Your Honor this week.
11           THE COURT:  You will have it in this week.
12           MR. CLAFFEE:  Yes, Your Honor.
13           THE COURT:  Okay.  Thank you.
14           And tell me what the government would expect in
15  terms of procedures for the CIPA status conference itself?
16           MR. CLAFFEE:  So the CIPA status conference itself
17  is really just to go over the various sections of CIPA and to
18  layout the procedures that will need to take place if there
19  is classified information at issue, and then to set a motion
20  schedule for the government filing a motion under CIPA
21  Section 4 to either delete, restrict or supplement discovery
22  that deals with classified information and then a schedule
23  for the defense to make its motion if it intends to introduce
24  any classified information at trial and the procedures for
25  handling that and such.

1          So the actual CIPA 2 status conference that we'd
2 have would be to sort of lay out that process and to pick
3 dates for those filings would be due in advance of trial.
4          THE COURT:  So two questions about that.
5          First, when is the earliest date at which you think
6 it would make sense to hold the CIPA status conference and
7 second, are there are any -- does the government anticipate
8 that there would be an dissemination of classified material,
9 or discussion of classified material at the CIPA status
10 conference itself such that any -- that you'd be requesting
11 any precaution relating to public access?
12          MR. CLAFFEE:  No, at the status conference itself,
13 no, no classified information is or can be discussed.
14          And prior to the status conference, there won't be
15 any classified information disseminated to either the court
16 or the defendant.
17          It would be at that point that we would request the
18 entry of a classified information protective order under CIPA
19 Section 3 and after that there are security measures put in
20 place under CIPA involving the classified information
21 security officer that will ask Your Honor to appoint to
22 handle classified information and to work with Your Honor to
23 set up the appropriate settings for the hearings that require
24 the discussion of classified information.
25          THE COURT:  Okay.  And as to the earlier date on

1  which it would make sense to have that status conference?
2          MR. CLAFFEE:  I think probably within a month after
3  we filed the CIPA Section 2 motion, which is why -- before
4  Your Honor got on discussing date in February.
5          THE COURT:  Okay.  Did you come up with a date to
6  propose?
7          MR. CLAFFEE:  Yes, Your Honor.  We were looking at
8  the date of the  -- February 26th, Friday at noon.  We
9  understand that Your Honor may be in trial that week, but
10 your courtroom deputy suggested that we might be able to do
11 it on a break on Friday, the 26th.
12         THE COURT:  Okay.  All right.  And as far as you
13 understand the defense is amenable to waiting that long?
14         MR. CLAFFEE:  That's my understanding, but I defer
15 to Mr. Carmen.
16         MR. CARMAN:  Your Honor, we're amenable to waiting
17 that long.
18         MR. CLAFFEE:  Okay.
19         THE COURT:  Anything else, Mr. Carman, from the
20 defense perspective, as far as --
21         MR. CARMAN:  Your Honor, as much as we're amenable
22 to waiting -- and I do appreciate the court expressing its
23 concern about moving this case along, obviously, there's this
24 process that we have to go through with CIPA, you know, not
25 knowing that the government has -- I don't have.  I really

1    don't see any classified information coming to bear in this
2    case.
3            You know, so obviously this whole process will
4    further delay the time when Mr. Angwang can have a trial, but
5    I think it's important that the court know ,and I don't know
6    how much feedback you're getting, Your Honor, from other
7    lawyers and other incarcerated defendants and I'm certainly
8    not looking to waste your time, but I would hate for you to
9    tell me two months from now that you wished I told you all of
10   this.
11           But Mr. Angwang has now been in prison for 107
12   days.  62 of those days he has been -- the MDC has been on
13   total lockdown.
14           He is now on a 23 and a half hour per day
15   restriction to his cell.  On weekends he's there 24 hours a
16   day.  He's not allowed to leave his cell.  He gets two to
17   three showers per week.
18           Last week or the week before MDC ended the
19   protective custody unit.  As you well know, Mr. Angwang was a
20   member of law enforcement.  He is now in general population.
21           He was told his other choice was to agree to go the
22   special housing unit which has all kinds of -- even if it's
23   possible to believe, more extreme restrictions in terms of
24   being in contact with family, contacting attorney, access to
25   law libraries.

1                    As things stand right now, Your Honor, I have not
2      been able to see him since the beginning of December.  There
3      is no attorney visitation right now.  Even when I had it I
4      visited him twice. I was only permitted to see him for 30
5      minutes.
6                    I've been in touch with Ms. Von Durum from Federal
7      Defenders.  They have their fingers on the pulse of some of
8      these issues.  She emailed me yesterday that they have no
9      idea when attorney visitation will begin again. There's no
10     family visitation whatsoever.
11                   And so beyond that we have 30 minute phone calls
12     that we can arrange on three or four days' notice  when
13     they're scheduled, Your Honor.
14                   We're told to be available for a three-hour
15     interval, not knowing when the call will come in. We have to
16     hang around and wait for our 30-minute phone call, even if it
17     comes in at a time that's completely inconvenient.
18                   The family does have calls, although phone call
19     access for Mr. Angwang is for no articulated reason suspended
20     at time for three, or four, or five days.  And so there's no
21     ability for him to communicate with his wife.
22                   As to Core Links, you know, the email interface
23     that we use to communicate with clients, which of course is
24     not really all that privileged, right?  I mean, certainly not
25     privileged  for the family and it's somewhat privileged for

1    us.
2            Inexplicably access is restricted for three, or
3    four or five days at a time. I have this going on with other
4    clients that I have at MDC.  And so you don't hear from them
5    for five or six days because they're not allowed out to use
6    the computers.
7            COVID's a huge problem at MDC, Your Honor.  86
8    staff members have been diagnosed with COVID.  140 inmates.
9    You know, there are major issues with medical care there.
10   Mr. Angwang has an ear infection since early December. He's
11   got a discharge from his ear with blood in it.  He requested
12   medical attention.  As of now he hasn't had a response.
13           So the MDC's not a safe people and it's something
14   that that we -- you know, you've probably seen in
15   compassionate release applications, but when it comes to
16   these people like Mr. Angwang who are in a case where like
17   this one it takes us an hour to download the discovery that
18   the government made available on 12/23.  We are still trying
19   manage the thousands, and thousands of documents.
20           I have a client who has no access to the law
21   library, and he has no access to his lawyer in person.  We
22   have very limited telephone access.
23           And so the question I think for the court is how is
24   it to be expected that Mr. Angwang would be able to consider
25   any plea agreement the government might offer, having little

1  or no access to the volumes of discovery that are now coming
2  in.
3              And even if he did, he has no access to talk about
4  it with his lawyer, to analyze it and discuss it and consider
5  its value in the context of whether he should try to resolve
6  his case short of trial, forget about the problems of
7  actually preparing for trial. It would be great if we had an
8  expedited trial schedule.  I don't know how I would ever be
9  able to prepare this case for trial with this guy, you know,
10 not being able to see him. The COVID situation by anyone's
11 guess right now is going to go on for months.
12             And so it really would -- what I'm probably saying
13 to Your Honor is I foresee in not too long a period of time
14 another request that the court consider releasing him.
15             We are making efforts to augment the bail package
16 that we proposed, a million dollar bail package with
17 additional property and additional suretors, even raising the
18 bond. I think these are things the court should consider.
19             Having Mr. Angwang, a guy who served our country
20 honorably in the military and who had an unblemished record
21 as a police officer, having him relegated to a place like
22 MDC, given his presumption of innocence, is to me
23 unconscionable.
24             And so I say these things to you, Your Honor, so
25 that you have them on your radar screen because I think that

1  it won't be too long and, quite frankly, I think we'll have
2  more horrible information to share as time goes on because
3  things have not been improving and we'll, when appropriate,
4  come back to Your Honor and ask you to reconsider the
5  decision not to release him.
6           THE COURT:  Okay.  So three things I would say in
7  response to that.
8           One, I understand and I did understand even before
9  this conference today just how draconian some of the
10 procedures in place at MDC are.
11          I understand those procedures may be required in
12 the views of whatever epidemiologist the Bureau of Prisons is
13 consulting with and I am not second guessing those
14 epidemiological determinations.
15          But I am acutely aware of just how severe some of
16 those restrictions are and how the full brunt of those
17 restrictions is borne by the incarcerated defendant
18 population, including Mr. Angwang.
19          And my desire to move this case forward as
20 expeditiously as we can and to hold the government's feet to
21 the fire is in very large part a function of that awareness.
22          Two, if you're having -- I've had other cases in
23 which defense counsel have expressed difficulties getting
24 written discovery material into the hands of their clients at
25 MDC.

1              And I do think the MDC has taken steps in certain
2      cases to redress that. And I don't want this case to be
3      slowed by the simple inability to get lawyer mail to Mr.
4      Angwang.
5              If there are documents you need to him to be
6      reviewing, and for whatever reason you can't get those
7      documents to him, let us know in a letter that that's the
8      case and let us know what, if anything, you think the court
9      can do to remedy that situation.  And if there are
10     appropriate actions that I can take, I'll take them.
11             And three, you know, I said -- I put out a written
12     opinion on bail in this case. I said in that opinion that I
13     thought the determination with respect to the Bail Reform Act
14     in this case was a difficult one.
15             And if you have a revised bail application to
16     present at some point I will, of course, be amenable to
17     considering that.
18             What is the defense view -- I think we're going to
19     unpack this in letters from both parties, but does the
20     defense agree at this point that this is a complex case for
21     purposes of the Speedy Trial Act, or is that something you
22     might want to be heard on?
23             MR. CARMAN:  Your Honor, my position is the
24     discovery that was provided to us, you know, is obviously
25     voluminous.  We got it as the holiday began.  There were

1 technical issues accessing it to the point where we didn't
2 actually begin downloading it until Monday.
3 　　　　　　And so it is -- I have no sense of what's even in
4 there honestly today.  And having said that, I'm not prepared
5 to consent to a complex case designation at this point
6 because I think that if we are interested in a speedy
7 resolution of this case, a speedy trial, we're prepared to
8 consent to an order of excludable delay, but I think it's
9 premature for me to able to say that we should allow this
10 case to languish under a complex case designation, especially
11 if Mr. Angwang is going to be remaining in MDC.
12 　　　　　　THE COURT:  Understood.  And I'll say two things to
13 the government on that score, which are A, let's not let the
14 case be slowed by access difficulties.
15 　　　　　　In other words, difficulties that the defense has
16 with opening documents, reviewing documents based on
17 formatting issues, or otherwise.
18 　　　　　　I expect the parties to cooperate as needed to make
19 sure that everything the government produces is in a format
20 that is useable to the defense and to the extent the defense
21 has questions, the government is available to at least
22 discuss those questions, and do whatever it can to make it --
23 to allow the defense efficiently to access the discovery
24 here.
25 　　　　　　And secondly I do want -- to the extent the

15

1  government is seeking complex case designation here, I'd like
2  them to state the basis in writing and let's ask for that
3  submission to be made by a week from Friday.
4      So that would be the --
5      THE CLERK: January 15th, Judge.
6      THE COURT: Yes. Thank you.
7      Mr. Claffee, is there -- does the government have
8  an application with respect to speedy trial time for today's
9  purposes?
10     MR. CLAFFEE: Yes, Your Honor.
11     First, with respect to a written argument on speedy
12 trial we may actually fold that into our CIPA Section 2
13 motion so you may get that sooner than Friday, the 15th.
14     But with respect to today, the government would ask
15 for an order of excludable delay until the next status
16 conference to stop the speedy trial clock from running, in
17 the interest of justice, to permit the parties to exchange
18 and review discovery, and based on the outstanding motion to
19 have the case designated as complex.
20     THE COURT: And I think we said the next status
21 conference is February 21st?
22     THE CLERK: The 26th, Judge, at noon.
23     THE COURT: The 26th. Okay. And Mr. Carman, I
24 think you had indicated you would consent to that exclusion.
25 Is that understanding correct?

16

1  MR. CARMAN: Yes. And I've discussed this with Mr.
2  Angwang and he agrees to the order.
3  THE COURT: Okay. So for the reasons that the
4  government laid out with respect to discovery and the
5  potential for plea negotiations, and also for the obvious
6  reasons relating to the Coronavirus epidemic, and also the
7  potential motion practice under the Classified Information
8  Procedures Act I do find that it is appropriate and in the
9  interests of justice for time to be excluded through February
10 26th under the Speedy Trial Act.
11         Mr. Carman, the only other thing I wanted to
12 mention was you had raised the notion that there are
13 unaddressed medical issues that Mr. Angwang is dealing with
14 at MDC.
15         And I had meant to say that the court is, of
16 course, happy to consider any requests that you might have in
17 that vein as well.
18         I'm not sure that I can solve whatever problems Mr.
19 Angwang is having, but if there's some relief that you think
20 would be helpful, you should by all means feel free to raise
21 that issue with the court.
22         MR. CARMAN: I appreciate -- this is John Carman. I
23 appreciate you saying that, Your Honor.
24         Mr. Angwang is not a complainer. So the first time
25 I heard of it was yesterday. And, quite frankly, in the past

1    what I've done is I've asked the government to help me gain
2    access for medical care for my clients at MDC.  I will tell
3    you that in the last eight months the government's efforts,
4    whatever they have been, have not resulted in much help.
5              I have some very sick people at MDC right now who
6    have problems far beyond what Mr. Angwang is suffering from.
7    And I have prosecutors who have told me they have tried, and
8    tried, and tried to get medical care or attention for these
9    people and it doesn't happen. So it's a real problem over
10   there right now.
11             THE COURT: Okay.  Well, yes, if you do feel the
12   need to raise the issue to the court, obviously, just let us
13   know what you have attempted, what the government has
14   attempted on your behalf and what the results have been to
15   day.
16             MR. CARMAN:  I will.  Thank you.  Thank you, Your
17   Honor.
18             THE COURT:  Okay.  Anything else from the
19   government before we adjourn?
20             MR. CLAFFEE:  Nothing from the government, Your
21   Honor.
22             THE COURT:  Anything fruther from the defeense?
23             MR. CARMAN:  No, Your Honor.  Thank you.
24             THE COURT:  All right.  Thank you.  Stay safe,
25   everyone, and we will reconvene on February 26th.

18

1          THE DEFENDANT:  Thank you, Your Honor.

2             (Proceedings concluded.)

3          I, CHRISTINE FIORE, court-approved transcriber and

4    certified electronic reporter and transcriber, certify that

5    the foregoing is a correct transcript from the official

6    electronic sound recording of the proceedings in the above-

7    entitled matter.

8

9    *[signature: Christine Fiore]*

10   _____                February 5, 2021

11      Christine Fiore, CERT

12         Transcriber