AAS:JMH/FJN/MAA/SAC
F. #2019R00929

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -                       No. 20-CR-442 (EK)

BAIMADAJIE ANGWANG,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

## THE GOVERNMENT'S OMNIBUS MOTIONS IN LIMINE

 

BREON PEACE
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

J. Matthew Haggans
Francisco J. Navarro
Meredith A. Arfa
Assistant U.S. Attorneys

Scott A. Claffee
Trial Attorney
Counterintelligence &
Export Control Section
U.S. Department of Justice
Special Assistant U.S. Attorney
Eastern District of New York
     (Of Counsel)

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .......................................................................................... iii

PRELIMINARY STATEMENT ......................................................................................1

BACKGROUND .............................................................................................................2

    I.      The Defendant .............................................................................................2

    II.     The PRC.......................................................................................................4

    III.    The Charges .................................................................................................5

    IV.    The Defendant Acted as an Agent of PRC Consular
            Officials ......................................................................................................6

    V.     The Defendant Made False Statements to Maintain His
            Security Clearance ......................................................................................9

ARGUMENT .................................................................................................................11

    I.      The Court Should Admit the Intercepted
            Communications Involving the Defendant and Related
            Translations and Transcripts ....................................................................11

          A.    Relevant Facts .............................................................................. 11

          B.    The Intercepted Communications Will Be
              Properly Authenticated................................................................. 12

               1.    Legal Standard ................................................................ 12

               2.    The Intercepted Communications Satisfy
                      Rule 901(a) ..................................................................... 13

          C.    The Intercepted Communications Are Admissible .............................. 15

          D.    The Government's Translations and Transcripts
              Are Admissible.............................................................................. 15

           E.    Portions of the Intercepted Communications Not
              Offered by the Government Are Not Admissible ................................ 16

i

II.    The Court Should Preclude the Defendant from Offering
       Evidence or Arguments on Other Irrelevant Topics .........................................17

       A.    Legal Standard ................................................................. 17

       B.    Evidence of the Defendant's Prior Good Conduct
             Should Be Precluded ........................................................ 18

       C.    Evidence and Arguments That the Defendant Has
             Been Selectively Prosecuted Should Be Precluded ............................ 20

       D.    Evidence and Arguments About Criminal
             Offenses Not Charged Should Be Precluded ...................................... 23

III.   The Court Should Preclude Evidence and Arguments
       Regarding Certain Irrelevant Methods of Notification
       Under Section 951 ..............................................................................25

IV.    The Court Should Preclude Evidence and Arguments
       Relating to Affirmative Defenses Not Properly Noticed...............................27

       A.    Legal Standard ................................................................. 27

       B.    Discussion ........................................................................ 28

V.     The Court Should Preclude Evidence and Arguments
       About Possible Punishments ..............................................................29

       A.    Relevant Facts ................................................................. 29

       B.    Legal Standard ................................................................. 30

       C.    Discussion ........................................................................ 30

VI.    The Court Should Permit the Government to Admit
       Evidence Pursuant to Business Records Certifications ...................................31

       A.    Relevant Facts ................................................................. 32

       B.    Legal Standard ................................................................. 33

       C.    Discussion ........................................................................ 35

CONCLUSION ....................................................................................................36

## TABLE OF AUTHORITIES

Page(s)

### FEDERAL CASES

Arlio v. Lively,
  474 F.3d 46 (2d Cir. 2007) ...................................................................................... 18

Melendez-Diaz v. Massachusetts,
  557 U.S. 305 (2009) ....................................................................................... 33, 34

Shannon v. United States,
  512 U.S. 573 (1994) ................................................................................................ 30

United States v. Al Kassar,
  660 F.3d 108 (2d Cir. 2011) .................................................................................... 20

United States v. Armstrong,
  517 U.S. 456 (1996) ................................................................................................ 21

United States v. Bailey,
  444 U.S. 394 (1980) ................................................................................................ 27

United States v. Bakhtiari,
  913 F.2d 1053 (2d Cir. 1990) .................................................................................. 28

United States v. Barone,
  913 F.2d 46 (2d Cir. 1990) ...................................................................................... 14

United States v. Ben-Shimon,
  249 F.3d 98 (2d Cir. 2001) ...................................................................................... 15

United States v. Berrigan,
  482 F.2d 171 (3d Cir. 1973) .................................................................................... 21

United States v. Black,
  No. 13-CR-316 (DLI), 2014 WL 5783067 (E.D.N.Y. Nov. 5, 2014) ................................ 16

United States v. Blume,
  967 F.2d 45 (2d Cir. 1992) ...................................................................................... 31

United States v. Bosch,
  399 F. Supp. 2d 521 (S.D.N.Y. 2005) ...................................................................... 14

United States v. Chalarca,
 95 F.3d 239 (2d Cir. 1996) .................................................................................. 15

United States v. Concepcion,
 983 F.2d 369 (2d Cir. 1992) ................................................................................. 23

United States v. Crowder,
 325 F. Supp. 3d 131 (D.D.C. 2018).................................................................... 28

United States v. Crown,
 No. 99-CR-1044, 2000 WL 709003 (S.D.N.Y. May 31, 2000) ........................ 28

United States v. Davidson,
 308 F. Supp. 2d 461 (S.D.N.Y. 2004) ............................................................... 16

United States v. Dhinsa,
 243 F.3d 635 (2d Cir. 2001) ................................................................................. 12

United States v. DiMarzo,
 80 F.3d 656 (1st Cir. 1996)................................................................................... 31

United States v. Duran,
 No. 07-CR-20999, 2008 WL 11333989 (S.D. Fla. Oct. 10, 2008) .................... 29

United States v. Eberhart,
 467 F.3d 659 (7th Cir. 2006) ................................................................................ 13

United States v. Ellis,
 460 F.3d 920 (7th Cir. 2006) ................................................................................ 34

United States v. Farhane,
 634 F.3d 127 (2d Cir. 2011) ............................................................................ 21, 22

United States v. Fawwaz,
 691 Fed. App'x 676 (2d Cir. June 2, 2017) ........................................................ 17

United States v. Figueroa,
 548 F.3d 222 (2d Cir. 2008) ................................................................................. 23

United States v. Fuentes,
 563 F.2d 527 (2d Cir. 1977) ............................................................................ 13, 14

United States v. Gagliardi,
 506 F.3d 140 (2d Cir. 2007) ............................................................................ 12, 13

iv

United States v. Gottesfeld,
    313 F. Supp. 3d 360 (D. Mass. 2018) .................................................................. 28

United States v. Guzman-Loera,
    No. 09-CR-466 (BMC), 2018 WL 2744701 (E.D.N.Y. June 7, 2018) ............................ 22

United States v. Hemmings,
    482 F. App'x 640 (2d Cir. 2012) ................................................................ 13, 14

United States v. Hill,
    658 F. App'x 600 (2d Cir. 2016) ......................................................................... 16

United States v. Johnson,
    507 F.3d 793 (2d Cir. 2007) ............................................................................... 16

United States v. Johnson,
    688 F.3d 494 (8th Cir. 2012) .............................................................................. 34

United States v. Jones,
    52 F.3d 924 (11th Cir. 1995) .............................................................................. 21

United States v. Komasa,
    767 F.3d 151 (2d Cir. 2014) ............................................................................... 34

United States v. Lewis,
    110 F.3d 417 (7th Cir. 1997) .............................................................................. 31

United States v. Louis,
    814 F.2d 852 (2d Cir. 1987) ............................................................................... 14

United States v. Marcum,
    16 F.3d 599 (4th Cir. 1994) ............................................................................... 21

United States v. Marin,
    669 F.2d 73 (2d Cir. 1982) ................................................................................ 16

United States v. Miller,
    641 F. Supp. 2d 161 (E.D.N.Y. 2009) ................................................................. 18

United States v. Morgan,
    505 F.3d 332 (5th Cir. 2007) .............................................................................. 34

United States v. Nekritin,
    No. 10-CR-491 (KAM), 2011 WL 2462744 (E.D.N.Y. June 17, 2011) ........................ 19

United States v. Pluta,
    176 F.3d 43 (2d Cir. 1999) ................................................................. 12

United States v. Qualls,
    613 F. App'x 25 (2d Cir. 2015) ........................................................... 34

United States v. Rafiekian,
    991 F.3d 529 (4th Cir. 2021) ............................................................... 28

United States v. Regan,
    103 F.3d 1072 (2d Cir. 1997) .............................................................. 21

United States v. Rivera,
    No. 13-CR-149 (KAM), 2015 WL 1725991 (E.D.N.Y. Apr. 15, 2015) ........... 19

United States v. Roberts-Rahim,
    No. 15-CR-243 (DLI), 2015 WL 6438674 (E.D.N.Y. Oct. 22, 2015) ............. 18

United States v. Rosado,
    728 F.2d 89 (2d Cir. 1984) ............................................................. 22, 23

United States v. Ruggiero,
    928 F.2d 1289 (2d Cir. 1991) .......................................................... 12, 13

United States v. Stewart,
    433 F.3d 273 (2d Cir. 2006) ................................................................ 23

United States v. Taylor,
    562 F.2d 1345 (2d Cir. 1977) .............................................................. 21

United States v. Thomas,
    116 F.3d 606 (2d Cir. 1997) ........................................................... 22, 23

United States v. Tin Yat Chin,
    371 F.3d 31 (2d Cir. 2004) ................................................................. 12

United States v. Tropeano,
    252 F.3d 653 (2d Cir. 2001) ........................................................... 13, 14

United States v. Ulerio,
    859 F.2d 1144 (2d Cir. 1988) .............................................................. 15

United States v. Washington,
    705 F.2d 489 (D.C. Cir. 1983) ............................................................. 21

United States v. Watts,
    934 F. Supp. 2d 451 (E.D.N.Y. 2013) ................................................................ 30

United States v. Weiland,
    420 F.3d 1062 (9th Cir. 2005) ........................................................................... 34

United States v. Yeley-Davis,
    632 F.3d 673 (10th Cir. 2011) ........................................................................... 34

## FEDERAL STATUTES

18 U.S.C. § 794 ...................................................................................................... 25

18 U.S.C. § 951 ..................................................................................... 1, 5, 25, 28

18 U.S.C. § 1001 ............................................................................... 1, 5, 10, 29

18 U.S.C. § 1343 ..................................................................................... 1, 5, 29

18 U.S.C. § 1512 ..................................................................................... 1, 5, 29

## FEDERAL RULES

Fed. R. Crim. P. 12 .............................................................................................. 21

Fed. R. Evid. 401 ................................................................................................ 30

Fed. R. Evid. 403 ........................................................................................... passim

Fed. R. Evid. 801 ................................................................................................ 15

## FEDERAL REGULATIONS

28 C.F.R. § 5.5 .................................................................................................... 27

28 C.F.R. § 73.3 ..................................................................................... 25, 26, 27

PRELIMINARY STATEMENT

The government respectfully submits these motions in limine in advance of the

upcoming trial in this matter, which is scheduled to begin on September 12, 2022.  The

indictment charges the defendant with acting as an agent of the People's Republic of China

(the "PRC") without prior notice to the Attorney General, in violation of 18 U.S.C. § 951(a)

(Count One); wire fraud, in violation of 18 U.S.C. § 1343 (Count Two); making false

statements, in violation of 18 U.S.C. § 1001 (Count Three); and obstruction of an official

proceeding, in violation of 18 U.S.C. § 1512(c)(2) (Count Four).  See generally Indict., ECF

No. 20 ("Indictment").

The government respectfully requests that the Court rule that: (1) the

government can admit certain intercepted communications involving the defendant into

evidence pursuant to Federal Rule of Evidence 901(a), including specifically finding that

(a) the intercepted communications, if offered by the government, are not hearsay; (b) the

government's uses of translations and transcripts for admitted evidence is proper; and (c) the

defendant is precluded from introducing irrelevant, self-serving portions of the intercepted

communications not offered by the government; (2) the defendant is precluded from offering

evidence and arguments regarding irrelevant topics, including (a) regarding the defendant's

good conduct; (b) any contention that the defendant is being selectively prosecuted; and

(c) the fact that the defendant has not been charged with other criminal offenses, such as

espionage; (3) the defendant is precluded from offering evidence or arguments regarding

certain irrelevant methods of notification under 18 U.S.C. § 951; (4) the defendant is

precluded from offering evidence and arguments regarding affirmative defenses not properly

noticed; (5) the defendant is precluded from offering evidence and arguments regarding the punishment the defendant may face if convicted at trial; and (6) the government is permitted to admit evidence pursuant to business records certifications.[1]

BACKGROUND[2]

I.      The Defendant

The defendant BAIMADAJIE ANGWANG ("ANGWANG") is a 35-year-old ethnic Tibetan native of the PRC and a naturalized U.S. citizen who resides in Williston Park, New York in the Eastern District of New York.  ANGWANG initially traveled to the United States on a cultural exchange visa in November 2004, then returned to the PRC. ANGWANG later applied for and obtained a student visa, returning to the United States in May 2005.  While in the United States, ANGWANG applied for and ultimately was granted asylum, based on his claim that he had been arrested and tortured in the PRC due in part to his Tibetan ethnicity.  ANGWANG later, in or around December 2007, adjusted his status to that of a legal permanent resident.

On or about April 4, 2009, ANGWANG enlisted in the United States Marine Corp (the "USMC").  He was on active-duty status from approximately October 2009 until April 2014.  As a member of the USMC, after completing training in South Carolina,

---

[1]      The government reserves the right to offer additional motions in limine as may become appropriate.

[2]      The facts set forth herein include facts the government expects to establish at trial and facts the government provides as context for the requested relief.  The facts set forth herein are only a summary of the evidence and are not exhaustive.

ANGWANG was stationed in the United States and Afghanistan. During his USMC service, ANGWANG applied for and, on or about September 17, 2010, was granted U.S. citizenship. ANGWANG held the rank of Sergeant when he completed his active USMC service period in approximately April 2014. ANGWANG shortly thereafter transferred to the United States Army Reserve (the "USAR"). As a member of the USAR, ANGWANG held the rank of Staff Sergeant and was stationed at Fort Dix, New Jersey in an Airborne Civil Affairs battalion. ANGWANG was a Civil Affairs Specialist whose duties and responsibilities included advising the command on the tactical and operational deployment of Civil Affairs teams. Among other duties, ANGWANG assisted in planning, training, advising, and executing civil-military programs.

At all times relevant to the charged conduct, in connection with his USMC and USAR service, ANGWANG held a "SECRET" level security clearance, having submitted completed Forms SF-86, Questionnaire for National Security Positions, in February 2011 and July 2014, as well as a supplemental Form SF-86C in May 2019.

In early 2016, ANGWANG joined the New York City Police Department (the "NYPD"). During part of the relevant time period, ANGWANG held the rank of Police Officer, and was assigned to the 111th precinct in Queens, where he served as a patrol officer and member of the precinct's crime prevention team. ANGWANG was later assigned to the

community affairs unit where his duties included, among other things, serving as a liaison between the NYPD and the community served by the 111th precinct.[3]

II.     The PRC

The PRC is the largest nation by population, and among the largest nations by geographic expanse, in the world.  Its political system is dominated by the Chinese Communist Party (the "CCP").  The PRC, under the CCP's control, undertakes a variety of initiatives overseas to neutralize sources of potential opposition to the PRC's policies and authority.  At all relevant times, one such initiative was united front work, overseen by the United Front Work Department (the "UFWD").  The UFWD was responsible for, among other objectives, neutralizing sources of potential opposition including through actions to increase the CCP's political influence, to interfere with the Chinese diaspora, and to suppress dissident movements, including the Tibetan dissident movement.  One UFWD affiliate organization was the China Association for Preservation and Development of Tibetan Culture (the "PRC Tibetan Association").  See, e.g., Cmplt., ECF No. 1 ("Complaint"), ¶ 6.

Tibet is an autonomous region in the PRC.  The region has historically been home to ethnic Tibetans, among others, as well as the spiritual home of Tibetan Buddhism and the traditional seat of the Dalai Lama.  In 1951, the PRC occupied Tibet and took control of the region.  Since that time, a Tibetan independence movement has existed, which calls for

---

[3]     ANGWANG remains employed by the NYPD; he has been assigned to restricted duty with periodic reporting requirements, and does not provide active services as an NYPD officer.  ANGWANG was discharged other than honorably from the USAR following his arrest in this case.

the independence of Tibet and political separation from the PRC.  The independence

movement is largely supported by the diaspora of ethnic Tibetans worldwide, including those

in the United States.  Thousands of Tibetans are believed to have been killed by the PRC

during periods of repression and martial law in the region.  The PRC has referred to Tibetans

as one of "the five poisons" that threaten the stability of the PRC.

The PRC Consulate in New York, New York (the "PRC Consulate") is a

diplomatic establishment that provides consular services to the PRC and foreign citizens in

the New York City area.  PRC personnel stationed at the PRC Consulate include officials

from various arms of the PRC government, including, as relevant here, the individuals

referenced in the Complaint as "PRC Official-1" and "PRC Official-2."

III.    The Charges

The Indictment charges the defendant with: one count of, between May 2018

and September 2020, acting as an agent of the PRC without prior notice to the Attorney

General, in violation of 18 U.S.C. § 951(a) (Count One); one count of wire fraud, by means

of electronic transmission of a materially false SF-86C security clearance form dated May

17, 2019, in violation of 18 U.S.C. § 1343 (Count Two); one count of making false

statements, by means of filing that same SF-86C security clearance form, which omitted the

defendant's extensive contact with PRC government officials and continuing contact with

PRC-citizen family members, in violation of 18 U.S.C. § 1001 (Count Three); and one count

of obstruction of an official proceeding, specifically, the defendant's national security

background investigation, in violation of 18 U.S.C. § 1512(c)(2) (Count Four).  See generally

Indict.; Cmplt.

5

IV.      The Defendant Acted as an Agent of PRC Consular Officials

        Beginning as early as August 2014, the defendant maintained relationships with at least two PRC officials stationed at the PRC Consulate.  Specifically, the government has alleged that two PRC officials working for the PRC Consulate, i.e., PRC Official-1 and PRC Official-2, were the defendant's primary handlers.  Telephone records reflect that the defendant was in telephonic contact via calls or text messages with PRC Official-1 on dozens of occasions between August 2014 and August 2017.  The defendant's relationship with PRC Official-2—whom the defendant regularly addressed using a term that translates to "Boss," Cmplt., ¶¶ 7, 11— began as early as June 2018 and continued into 2020.  PRC Official-2 listed the PRC Tibetan Association as his employer on his 2017 nonimmigrant visa application to enter the United States and begin his tenure at the PRC Consulate.  Id. at ¶ 6. UFWD officials often meet with local association groups that connect Chinese emigrants from common geographic areas and ethnic backgrounds.  Id.  The UFWD's purpose in meeting with these groups is to secure political, moral, and financial support for the PRC and to maintain control over groups the PRC government views as problematic, such as Tibetans. Id.

        The Federal Bureau of Investigation (the "FBI"), via court-authorized electronic surveillance, intercepted numerous communications—principally, telephone calls—involving the defendant and PRC Official-2 that revealed the defendant received tasks from, and reported back to, PRC officials.  For example, in November and December 2018, the defendant stated to PRC Official-2: (1) "[L]et [PRC Official-2's superiors in Beijing] know, you have recruited one in the police department"; (2) "but at least let [PRC Official-

6

2's superiors] know, hey, you have someone in the police department here now"; and (3) "[PRC Official-2's superiors] should be happy . . . because you have extended your reach into the police department." Id. at ¶¶ 15, 18.  The defendant and PRC Official-2 also discussed how the defendant could "support [PRC Official-2's] work to boost [PRC Official-2]." Id. at ¶ 15.  Similarly, the defendant asked PRC Official-2 for assignments; discussed his desire to further the goals and objectives of the PRC government, with or without compensation (e.g., id. (discussing desire to raise "our country's soft power," i.e., the PRC's soft power); id. at ¶ 17 (discussing willingness to provide information without pay); id. at ¶ 20 (discussing desire to bring "glory" to the PRC)); provided PRC Official-2 with the names of Tibetan individuals living in the United States and the names of Tibetan residents in the United States the defendant believed were potential intelligence sources for the PRC, id. at ¶¶ 15-20; and attended Tibetan community meetings and reported to PRC Official-2 on the substance of those meetings, id.  PRC Official-2 and the defendant also invited each other to important work events: PRC Official-2 invited the defendant to attend the PRC Consulate's "National Day" reception in September 2018, and the defendant invited PRC Official-2 to attend the annual banquet for the Asian Jade Society, an NYPD fraternal organization, in December 2018.  Id. at ¶¶ 11, 18.  None of these activities fell within the scope of the defendant's official duties and responsibilities with either the NYPD or the USAR.  Id. at ¶ 9.

The defendant also consulted with PRC Official-2 before engaging in conduct that might conflict with his relationship with the PRC.  For example, in November 2019, the defendant was approached within the NYPD to participate in an interview with New Tang

Dynasty Television ("New Tang"), a television network founded by Chinese-Americans who had fled the PRC.[4]  The defendant was well-suited to the task: he had by that time been assigned to serve as a community liaison officer and was fluent in Mandarin.  However, rather than agreeing to the interview, the defendant sought secret guidance from PRC Official-2 because, as both the defendant and PRC Official-2 observed, New Tang was part of Falun Gong—an-anti-PRC spiritual group.[5]  Cmplt., ¶ 24.  When PRC Official-2 expressed concern about the defendant doing the interview, the defendant assured PRC Official-2 that he had not agreed to do it.  The defendant noted that if the interview were with "People's Daily"—an official PRC newspaper—it would be "no problem" to do it, but for New Tang, the defendant observed, "I don't dare be too reckless with this matter."  Id.  After discussion, PRC Official-2 advised that the interview was "too much of a risk" and that the defendant should "absolutely don't go on it."  Id.  The two then developed an explanation that the defendant could give his NYPD superiors—"a good reason that's suitable"—to avoid doing the interview.  Id.  The defendant ultimately did not participate in the interview with New Tang, and informed PRC Official-2 that he had carried out PRC Official-2's instructions.  Id. at ¶ 25.

---

[4]       According to its website, New Tang is "a New York-based, global television network founded in 2001 by Chinese-Americans who fled communism."  See "About Us," available at ntd.com/about.html (last visited Aug. 6, 2022).

[5]       The PRC banned Falun Gong in 1999 and has labeled it an "evil cult."  Publicly available sources reflect that the PRC considers Falun Gong—along with Tibetans, Uighur Muslims, democracy, and pro-independence Taiwanese—one of "the five poisons" that threaten PRC rule.  Cmplt., ¶ 24, n.2.

At no time did the defendant provide notice to the Attorney General of the United States that he was acting as an agent of the PRC.  Id. at ¶ 10.

In addition to his ties to the PRC Consulate, the defendant maintains familial ties to the PRC.  The defendant's father is a CCP member and a retired member of the People's Liberation Army, the principal military force of the PRC.  Id. at ¶ 28.  The defendant's mother is a retired PRC government official and a CCP member.  Id.  The defendant's brother, during the relevant period, served as a reservist in the PRC's People's Liberation Army.  Id.  All three family members reside in the PRC.  Id.

V.      The Defendant Made False Statements to Maintain His Security Clearance

In connection with the defendant's USAR service, the defendant completed various electronic SF-86 forms, which, as described above, are questionnaires for national security positions.  Cmplt., ¶ 31.  These forms are used by federal agencies to initiate the background investigation required to determine placement in sensitive national security positions.  Id.  The SF-86 form also is used in eligibility determinations for access to classified information; for the defendant, completion of the form was necessary for him to obtain his "SECRET" level security clearance.  Id.  One variation of that form, the SF-86C, is used to report any updates or changes to an individual's most recent full SF-86 investigation.  Id.

On or about May 17, 2019, the defendant, from a computer located in the Eastern District of New York, digitally signed and electronically submitted an SF-86C in connection with his USAR status.  Id. at ¶ 33.  Block 4 of Form SF-86C stated, "I understand

9

that a knowing and willful false statement on this form can be punished by fine or

imprisonment or both (18 U.S.C. 1001)." Id.

On that form, the defendant was asked the following question:

- Since your last SF-86, **have you or any member of your immediate family had any contact with a foreign government**, its establishment (such as an embassy, **consulate**, agency, military service, intelligence or security service, etc.) **or its representatives**, whether inside or outside the U.S.?  If yes, provide the following information: Full name, occupation, employer, approximate date of first contact, methods of contact, frequency of contact, nature of relationship, country of citizenship, telephone number, email address, is this foreign national affiliated with a foreign government, military, security, defense industry, or intelligence service?

Id. at ¶ 34 (emphases added).  The defendant falsely answered "No" to this question.  Id.  As

detailed above, the defendant had extensive contacts with two PRC officials at the PRC

Consulate during the relevant time.  On the form, the defendant was also asked the

following:

- Since your last SF-86, **do you have**, or have you had, **close and/or continuing contact with a foreign national with whom you**, your spouse, cohabitant, **are bound by affection, influence, common interests, or obligations**?  If yes, provide the following information: Full name, occupation, employer, approximate date of first contact, methods of contact, frequency of contact, nature of relationship, country of citizenship, telephone number, email address, is this foreign national affiliated with a foreign government military, security, defense industry, or intelligence service?

Id. at ¶ 35 (emphases added).  The defendant again falsely answered "No" to this question,

concealing his relationships with PRC Official-1 and PRC Official-2—relationships which,

at minimum, influenced the defendant's behavior as summarized above.  Moreover, and as

also described above, the defendant had maintained contact with family members in the PRC

10

including some who are or were affiliated with the People's Liberation Army and the CCP during the relevant time.

ARGUMENT

I.      The Court Should Admit the Intercepted Communications Involving the Defendant and Related Translations and Transcripts

At trial, the government will seek to admit a variety of intercepted communications. The government requests that the Court rule that (1) the government's proposed methods of authenticating such evidence satisfy the standards of Federal Rule of Evidence 901(a); (2) the intercepted communications, if offered by the government, are not hearsay; (3) the government's use of translations and transcripts regarding these communications is proper; and (4) the defense is precluded from introducing irrelevant, self-serving portions of the intercepted communications not offered by the government.

A.      Relevant Facts

The intercepted wire and electronic communications that the government intends to introduce at trial were lawfully intercepted by the FBI pursuant to court orders. Principally, these are intercepted telephone calls involving the defendant and PRC Official-2.[6]

---

[6]      The defendant's motion to suppress evidence that may bear upon certain of the intercepted communications remains pending. See Def. Mot. for Disclosure, ECF No. 86 (Feb. 2, 2022).

B.    The Intercepted Communications Will Be Properly Authenticated

1.    Legal Standard

Federal Rule of Evidence 901(a) provides that "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." A trial court has "broad discretion to determine whether [evidence] has been properly authenticated." United States v. Pluta, 176 F.3d 43, 49 (2d Cir. 1999). "Rule 901(a) . . . is satisfied if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification." United States v. Ruggiero, 928 F.2d 1289, 1303 (2d Cir. 1991) (internal quotation marks and citation omitted); see also United States v. Tin Yat Chin, 371 F.3d 31, 38 (2d Cir. 2004). "[T]he burden of authentication does not require the proponent of the evidence to rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be." Pluta, 176 F.3d at 49 (internal quotation marks and citation omitted). Rule 901 "does not erect a particularly high hurdle." United States v. Dhinsa, 243 F.3d 635, 658 (2d Cir. 2001) (internal quotation marks and citation omitted).

In general, the Second Circuit has "stated that the standard for authentication is one of reasonable likelihood, and is minimal." United States v. Gagliardi, 506 F.3d 140, 151 (2d Cir. 2007) (internal quotation marks and parenthetical omitted). With respect to audio recordings, however, the court has required the government to prove "by clear and convincing evidence that sound recordings are what they purport to be." United States v.

Hemmings, 482 F. App'x 640, 643 (2d Cir. 2012) (summary order) (internal quotation marks

omitted) (citing Ruggiero, 928 F.3d at 1303).

> 2.    The Intercepted Communications Satisfy Rule 901(a)

Regarding the intercepted communications that the government intends to

present, the Second Circuit has "never . . . adopted a rigid standard for determining the

admissibility of tape recordings." United States v. Fuentes, 563 F.2d 527, 532 (2d Cir.

1977); accord United States v. Tropeano, 252 F.3d 653, 661 (2d Cir. 2001).  Several types of

witness testimony may authenticate such communications.  See Gagliardi, 506 F.3d at 151

("The testimony of a witness with knowledge that a matter is what it is claimed to be is

sufficient to satisfy this standard.") (citing Fed. R. Evid. 910(b)(1)).

First, a participant to the conversation may testify that the recording, including

recordings of electronic written communications, such as instant messages or emails, is an

accurate record of the conversation.  See Gagliardi, 506 F.3d at 151 (affirming district court

ruling that testimony of participants in email and instant messages was sufficient to

authenticate such communications under Rule 901).  Indeed, recordings may be

authenticated by individuals who were present for and overheard one side of the recorded

conversation, but are not captured speaking on the recording.  See United States v. Eberhart,

467 F.3d 659, 667 (7th Cir. 2006) ("[A] court may admit a recording where a witness

testifies that he only heard half of the recorded conversation.").

Second, an individual who was not present for the conversation can

authenticate the recording through testimony that he or she recognizes the voices of the

participants.  See Hemmings, 482 F. App'x at 643 (holding that "tapes were authenticated by

13

a government agent who recognized the voices on the tapes"); United States v. Louis, 814 F.2d 852, 856 (2d Cir. 1987) (concluding that tapes of defendant's conversations with known drug dealer were properly authenticated by testimony of alleged co-conspirator that he recognized defendant's voice).

Third—and likely applicable to most of the communications the government will offer in this case—a technician or agent who made or oversaw the making of a recording may authenticate it. See United States v. Barone, 913 F.2d 46, 49 (2d Cir. 1990) (government is "not required to call as a witness a participant in a recorded conversation in order to authenticate the recording; it may lay the foundation for the recording through the testimony of the technician who actually made it"); United States v. Bosch, 399 F. Supp. 2d 521, 522 (S.D.N.Y. 2005) (case agent who oversaw monitoring of court-authorized wiretap could authenticate recordings).

Fourth, evidence of an unbroken chain of custody may establish the authenticity of recordings even in the absence of a contemporaneous witness to the recorded conversations. See Tropeano, 252 F.3d at 661 (citing Fuentes, 563 F.2d at 532). The absence of an unbroken chain of custody, however, does not preclude authentication of the recordings through other means. See id.; Hemmings, 482 F. App'x at 643.

At trial, the government may seek to rely upon any or all of these methods to authenticate its intercepted communications. For instance, the government expects that one or more FBI witnesses will testify that (1) they monitored or oversaw the monitoring of communications intercepted pursuant to court orders; (2) they recognize the voices of the participants in the recordings; and/or (3) there has been an unbroken chain of custody of the

14

communications since the time of recording.  The government requests that the Court rule that each of these methods of authentication, independently, constitute proper authentication under Rule 901(a).

C.    The Intercepted Communications Are Admissible

The intercepted communications principally involve the defendant—a party opponent—and a co-conspirator, i.e., PRC Official-1 or PRC Official-2.  Accordingly, the statements contained in such recordings, if offered by the government, are not hearsay, and are admissible.  See Fed. R. Evid. 801(d)(2)(A) (statements of party-opponent offered against that party are not hearsay); Fed. R. Evid. 801(d)(2)(E) (statements of co-conspirator during and in furtherance of a conspiracy offered against that party are not hearsay).

D.    The Government's Translations and Transcripts Are Admissible

It is well-settled that the Court has discretion to permit transcripts of intercepted communications to be provided to the jury to aid their review of the evidence. See United States v. Chalarca, 95 F.3d 239, 246 (2d Cir. 1996).  Where the original conversations were conducted in a foreign language, moreover, "an English language transcript may be submitted to permit the jury to understand and evaluate the evidence." United States v. Ben-Shimon, 249 F.3d 98, 101 (2d Cir. 2001); see also United States v. Ulerio, 859 F.2d 1144, 1145 (2d Cir. 1988) (holding not abuse of discretion to admit translated transcripts and allow jury to retain them during deliberations).  The government requests that, where the Court has admitted the underlying evidence, the Court also admit as exhibits the government's translated transcripts of the intercepted communications.

15

E.    Portions of the Intercepted Communications Not Offered by the Government
      Are Not Admissible

The Court should permit the government to introduce portions of the

defendant's intercepted communications in which he and his co-conspirators inculpate the

defendant, but preclude the defendant from introducing other portions of the intercepted

communications (or other communications) because these portions are inadmissible hearsay.

"When the defendant seeks to introduce his own prior statement for the truth of the matter

asserted, it is hearsay, and it is not admissible."  United States v. Marin, 669 F.2d 73, 84

(2d Cir. 1982); United States v. Black, No. 13-CR-316 (DLI), 2014 WL 5783067, at *2

(E.D.N.Y. Nov. 5, 2014) ("[T]he defendant's self-serving, exculpatory statements are

inadmissible hearsay . . . .").  In general, a defendant may not "attempt to get his side of the

. . . story in front of the jury without himself testifying and opening himself up to cross-

examination."  See United States v. Davidson, 308 F. Supp. 2d 461, 480 (S.D.N.Y. 2004).

This prohibition applies, with limited exception, even where a defendant seeks

to offer other parts of the same conversation or message offered by the government.  See

United States v. Hill, 658 F. App'x 600, 605 (2d Cir. 2016) (affirming district court's parsing

of defendant's recorded statement to admit discrete inculpatory statements and exclude other

self-serving statements that he was "innocent"); United States v. Johnson, 507 F.3d 793

(2d Cir. 2007) (holding court properly bifurcated defendant's post-arrest statement and

precluded defendant from introducing self-serving portion of defendant's post-arrest

statement).  Accordingly, courts often parse a defendant's statements to admit the inculpatory

statements offered by the government and exclude the self-serving statements offered by the

16

defendant.  See United States v. Fawwaz, 691 Fed. App'x 676, 678 (2d Cir. June 2, 2017)

(affirming district court's refusal to admit statements under rule of completeness, noting that

"admitted statements [were] independent of the omitted statements").

Here, the portions of the intercepted communications that the government

seeks to admit include the defendant's own inculpatory statements, as well as relevant co-

conspirator statements.  The jury need not hear the additional portions of the intercepted

communications in order to understand the context of those of the defendant's statements.

To the extent the defendant wishes to provide the jury with context for the statements

presented by the government or with additional statements, he can do so by testifying.

## II.    The Court Should Preclude the Defendant from Offering Evidence or Arguments on Other Irrelevant Topics

The government also moves in limine to preclude the admission of evidence or

arguments by the defense regarding certain topics that are either irrelevant or would likely

confuse the issues, mislead the jury, or result in unfair prejudice to the government.

Specifically, the government seeks to preclude the defendant from eliciting or introducing

evidence or arguments: (1) regarding the defendant's good conduct; (2) any—inaccurate—

contention that the defendant is being selectively prosecuted; and (3) the fact that the

defendant has not been charged with other criminal offenses, such as espionage.

### A.    Legal Standard

Federal Rule of Evidence 401 defines "relevant evidence" as evidence having

"any tendency to make a fact more or less probable than it would be without the evidence,"

where "the fact is of consequence in determining the action."  Rule 402, in turn, provides that

17

irrelevant evidence is not admissible.  See, e.g., Arlio v. Lively, 474 F.3d 46, 52 (2d Cir.

2007) ("If an item of evidence tends to prove a fact that is of consequence to the

determination of the action, it is relevant.  If it does not tend to prove a material fact, it is

irrelevant.") (internal quotation marks omitted).

        Pursuant to Rule 403, even relevant evidence may be excluded "if its probative

value is substantially outweighed by a danger of one or more of the following: unfair

prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly

presenting cumulative evidence."  "District courts have broad discretion to balance the

probative value of evidence against possible undue sympathy or bias as well as prejudice."

United States v. Miller, 641 F. Supp. 2d 161, 167 (E.D.N.Y. 2009).  Courts also have broad

discretion to exclude evidence if it has an "undue tendency to suggest decision on an

improper bias, commonly, though not necessarily, an emotional one."  Fed. R. Evid. 403

advisory committee's note.  Indeed, the Court may preclude the introduction of evidence

under Rule 403 even if it is intended to further a purported defense theory.  See United States

v. Roberts-Rahim, No. 15-CR-243 (DLI), 2015 WL 6438674, at *9 (E.D.N.Y. Oct. 22,

2015).

       B.      <u>Evidence of the Defendant's Prior Good Conduct Should Be Precluded</u>

        The government moves to preclude the admission of any evidence or

arguments at trial by the defendant regarding his prior good conduct, including evidence of

the honorable portions of the defendant's military and police service.  The defense's motion

to dismiss brief suggests the defense may seek to offer such prior good conduct evidence,

such as commendations awarded to the defendant from the military and the NYPD.  See, e.g.,

18

Def. Mot. to Dismiss, ECF No. 88, at ¶ 6 (incorporating as exhibit a copy of 2013 commendation from U.S. Navy awarded to the defendant), ¶ 8 (incorporating as exhibit a copy of 2018 commendation from NYPD awarded to the defendant).  The defense has also relied upon honorable portions of the defendant's service in support of its application for bond pending trial.  See, e.g., id. at ¶ 6.

Any evidence on these topics is irrelevant under Rule 401, and should be excluded under Rule 402.  In the alternative, the Court should exclude the evidence under Rule 403 because such evidence is likely to confuse the issues, mislead the jury, or result in unfair prejudice to the government.

Evidence that the defendant has on occasion engaged in prior good conduct or other non-criminal conduct, including the honorable portions of the defendant's service, is not relevant to his guilt or innocence of any of the charged crimes.  The Court therefore should exclude any such evidence or arguments regarding those issues at trial.  See United States v. Rivera, No. 13-CR-149 (KAM), 2015 WL 1725991, *2 (E.D.N.Y. Apr. 15, 2015) ("Evidence that a defendant engaged in prior good acts, when the defendant has not been charged with 'ceaseless' criminal conduct[,] is generally irrelevant and inadmissible."). Here, although the Indictment alleges a multi-year period during which the defendant acted as an unregistered agent of the PRC, the charges against the defendant do not allege the kind of "ceaseless, all-encompassing criminal conduct" that can, in limited circumstances, justify the admission of evidence of non-criminal conduct by the defendant.  See United States v. Nekritin, No. 10-CR-491 (KAM), 2011 WL 2462744, *5 (E.D.N.Y. June 17, 2011).  Rather,

the Indictment alleges a series of acts where the defendant acted as an agent of the PRC and lied on government security clearance forms.

In the alternative, even assuming _arguendo_ that the defendant's prior good conduct is relevant, under Rule 403 the defendant should not be permitted to introduce such evidence because it is highly likely to confuse the issues, mislead the jury, or result in substantial unfair prejudice to the government.  The jurors could view the trial and their deliberations as a judgment of the defendant's character as a whole, rather than considering and deciding the specific and discrete issues before them, _i.e._, whether the defendant committed the essential elements of the charged offenses.  See _United States v. Al Kassar_, 660 F.3d 108, 124 (2d Cir. 2011) ("[T]he trial judge was rightly concerned that, to the extent any of the evidence [of prior good acts] could be construed to relate to the charged conspiracies, the jury would find it extremely confusing, if not incomprehensible.").  In addition, the introduction of such evidence could improperly invite jury nullification.  If presented with evidence about the defendant's personal history and current circumstances, there is a significant possibility that the jurors will let sympathetic feelings for the defendant interfere with their duty to apply the law to the facts, which would result in substantial unfair prejudice to the government.

C.   Evidence and Arguments That the Defendant Has Been Selectively Prosecuted Should Be Precluded

"The Supreme Court has observed that a selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution.  Because it

involves a defect in the institution of the prosecution, the selective prosecution defense is an issue for the court rather than the jury." United States v. Regan, 103 F.3d 1072, 1082 (2d Cir. 1997) (citing United States v. Armstrong, 517 U.S. 456, 463 (1996)); accord United States v. Berrigan, 482 F.2d 171, 175 (3d Cir. 1973) ("The question of discriminatory prosecution relates not to the guilt or innocence of appellants, but rather addresses itself to a constitutional defect in the institution of the prosecution."); United States v. Marcum, 16 F.3d 599, 602 (4th Cir. 1994) (noting that selective prosecution concerns constitutional defects in prosecution, not guilt or innocence of defendant); United States v. Jones, 52 F.3d 924, 927 (11th Cir. 1995) ("[S]elective prosecution is a defect in the institution of the prosecution that has no bearing on the determination of factual guilt."); United States v. Washington, 705 F.2d 489, 495 (D.C. Cir. 1983) ("[T]he issue of selective prosecution is one to be determined by the court . . . as it relates to an issue of law entirely independent of the ultimate issue of whether the defendant actually committed the crimes for which she was charged.").

As a threshold matter, any claim alleging a defect in instituting the prosecution based on alleged improper governmental motives must be raised with the Court in advance of trial. See Fed. R. Crim. P. 12(b)(3)(A); see also United States v. Farhane, 634 F.3d 127, 167 (2d Cir. 2011); United States v. Taylor, 562 F.2d 1345, 1355 (2d Cir. 1977) (finding defense of selective prosecution waived because it was not raised prior to trial). A claim not made prior to the deadline set by the Court for motions is waived. See Fed. R. Crim. P. 12(e). The defendant here has not raised a selective prosecution claim, but, in arguments before the Court and in various filings, has questioned the validity of the government's prosecution.

21

See, e.g., Tr. of Argument re Bond at 5 (Feb. 12, 2021) ("Our preview of the government's case against [the defendant] hasn't really lived up to the billing that it got in [the government's] initial press release and their initial detention letter."); see also, e.g., Def. Mot. to Dismiss, ECF No. 88, at ¶ 19.  Accordingly, the government makes this motion out of an abundance of caution.

If the defense were to raise such a selective-prosecution claim before the jury, it would be encouraging the jury to decide the case based on something other than the elements of the charged crimes—i.e., the government's alleged motive in bringing charges against the defendant, which is irrelevant to the defendant's guilt.  That is impermissible. See, e.g., United States v. Rosado, 728 F.2d 89, 93 (2d Cir. 1984) (holding arguments about selective prosecution "invited jury nullification by questioning the Government's motives in subpoenaing appellants and prosecuting them for contempt"); see also United States v. Thomas, 116 F.3d 606, 615-16 (2d Cir. 1997) (noting "trial courts have the duty to forestall or prevent jury nullification").  Courts therefore regularly preclude criminal defendants from presenting such arguments to the jury in the opening statement and summation, as well as in cross-examinations of the government's witnesses.  See, e.g., Farhane, 634 F.3d at 166-67 (approving curative instruction where defense argued selective prosecution, explaining: "[A] selective prosecution defense alleges a defect in the institution of the prosecution, and as such is an issue for the court rather than the jury." (citation and internal marks omitted)); United States v. Guzman-Loera, No. 09-CR-466 (BMC), 2018 WL 2744701 at *6 (E.D.N.Y. June 7, 2018) ("Any selective-prosecution argument by defendant to the jury would [] be improper.").

Moreover, there is no evidentiary basis to argue that the prosecution of this defendant is selective.  See United States v. Figueroa, 548 F.3d 222, 227 (2d Cir. 2008) ("Although counsel may explore certain areas of inquiry in a criminal trial without full knowledge of the answer to anticipated questions, he must, when confronted with a demand for an offer of proof, provide some good faith basis for questioning that alleges adverse facts." (internal quotation marks omitted)); United States v. Concepcion, 983 F.2d 369, 391 (2d Cir. 1992) ("The trial court may, in its discretion, preclude questions for which the questioner cannot show a good faith basis.").

Finally, the government submits that any arguments regarding selective prosecution or targeting would result in unfair prejudice to the government, confusing the issues, or misleading the jury, and would invite jury nullification.  See Fed. R. Evid. 403; Rosado, 728 F.2d at 93; Thomas, 116 F.3d at 615-16.  Thus, the Court should preclude the defendant from arguing, either during jury addresses or the presentation of evidence, that the government had an improper motivation for prosecuting the defendant.

> D.  Evidence and Arguments About Criminal Offenses Not Charged Should Be Precluded

The government also moves for an order precluding the defense from arguing to the jury that the defendant was not charged with other offenses, such as espionage.  See, e.g., United States v. Stewart, 433 F.3d 273, 308-09 (2d Cir. 2006) (affirming grant of motion in limine precluding argument on offenses not charged and approving district court's rejection of defendant's requested jury instruction that defendant was not charged with a particular offense).  Notably, a standard jury instruction in this Circuit includes the

23

admonition: "The defendant is not charged with committing any crime other than the offenses contained in the indictment."  See Sand et al., Modern Federal Jury Instructions ("Sand"), Instruction 3-3 (2022).

The defendant here has already signaled that he may seek to argue that he lacked the requisite criminal intent based on evidence that, in communication with PRC Official-1 and PRC Official-2,  he used his "personal cell phone" with "no encryption" and "never used a burner phone."  See, e.g., Def. Mot. to Dismiss, ECF No. 88, at ¶ 17 (Feb. 11, 2022).  The defendant also has repeatedly argued from the fact that he has not been charged with espionage or with communicating or transmitting classified or defense information to the PRC government.  See, e.g., Def. Bond App., ECF No. 8, at 6 (Oct. 1, 2020) (contending "there was simply no information of value conveyed to PRC #2, much less anything of a classified, secret, or military nature."); Tr. of Argument re Bond, ECF No. 10, at 31 (defense counsel's argument describing this as "a case that's about soft power, it's not about military secrets, it's not about espionage, it's not about spying . . ."); Def. Ltr. in Supp. of Bond App., ECF No. 13, at 4 (Oct. 5, 2020) ("If sensitive, important or proprietary information was turned over to PRC #2, there is no doubt that the government would have laid bare that 'intelligence' in a filing 'under seal.'  That they have not done so, speaks to relative seriousness of the charges they have filed."); Def. Mot. for Release, ECF No. 36, at 5 (Feb. 2, 2021) ("The idea that Mr. Angwang is an 'intelligence asset' collecting information about his fellow Tibetans is simply not borne out by the transcripts of the conversations.").  Indeed, this Court has already recognized the defense's—misplaced—focus on this issue.  See Detention Order, ECF No. 16, at 4-5 (Oct. 7, 2020) ("Defendant's counsel downplays the

24

seriousness of the allegations, noting that Mr. Angwang is not accused of divulging classified information.  But that assertion merely explains why the Defendant is not charged with such disclosure[.]" (citing 18 U.S.C. §§ 794, 798)).

The defense should not be permitted to argue that the defendant must be innocent because he was not also charged with some other offense, such as espionage.  The jury's function is to evaluate only those charges that are pending in this case.  Accordingly, references or arguments regarding other offenses not charged are irrelevant and likely to confuse the jury, and therefore should be precluded.

III.   The Court Should Preclude Evidence and Arguments Regarding Certain Irrelevant
        Methods of Notification Under Section 951

The government moves in limine for an order that the government need not affirmatively prove the defendant's failure to notify the Attorney General under certain methods of notification that are irrelevant to the instant case.  Concomitantly, the government moves to preclude the defendant from introducing evidence or arguing that the defendant was permitted to, or did, notify pursuant to those methods.

An individual violates Section 951 if he "acts in the United States as an agent of a foreign government without prior notification to the Attorney General if required in [Section 951(b)]."  18 U.S.C. § 951(a).  Section 951(b) requires the Attorney General to "promulgate rules and regulations establishing requirements for notification," which are codified in Title 28, Code of Federal Regulations, Part 73.  Subsection (a) of the regulations provides the form of notification for all foreign agents, except for certain specialized categories of agents, who fall under subsections (b) and (c).  28 C.F.R. § 73.3(a).

25

Subsections (b) and (c) apply to foreign agents who are: "engaged in law enforcement investigations or regulatory agency activity" (via notification to the Interpol-United States National Central Bureau); "engaged in intelligence, counterintelligence, espionage, counterespionage or counterterrorism assignment or service" (via notification to the nearest FBI Legal Attaché); or "engaged in judicial investigations pursuant to treaties or other mutual assistance requests or letters rogatory" (via notification to the Office of International Affairs of the Department of Justice).  28 C.F.R. §§ 73.3(b), (c).

    The defendant's conduct clearly does not fall under subsections (b) or (c): he was not a PRC law enforcement agent engaged in law enforcement activity, he was not a PRC intelligence official, and he was not working for the PRC on treaty-authorized judicial investigations or mutual assistance requests.  And, to the government's knowledge, the defendant never provided any of the notifications required by subsections (b) or (c). Notably, the defendant has never contended that the applicable notification requirements are governed by subsections (b) or (c), nor that the defendant provided notification pursuant to either of those subsections.  The defendant's notification requirements therefore are governed by subsection (a).

    Pursuant to subsection (a), notification may be made via "letter, telex, or facsimile addressed to the Attorney General, directed to the attention of the National Security Division [of the Department of Justice]."  28 C.F.R. § 73.3(a).  The regulations also provide that an agent may register under the Foreign Agents Registration Act ("FARA") in lieu of notifying in one of the other acceptable forms.  28 C.F.R. § 73.3(e).  Registration under FARA requires making a filing via an online portal and paying a registration fee.  See, e.g.,

26

28 C.F.R. § 5.5 (listing fee schedule).  Accordingly, in order to prove Count One, at trial, the government intends to offer evidence that the defendant did not notify the Attorney General that he was acting as an agent of the PRC by sending "a letter, telex, or facsimile addressed to the Attorney General, directed to the attention of the National Security Division," see 28 C.F.R. § 73.3(a), nor did he register under FARA.

Because the defendant's notification requirements are not governed by subsections (b) or (c), the government moves this Court for an order that: (i) the government need not affirmatively prove the defendant's failure to notify under 28 C.F.R. §§ 73.3(b) or (c); and (ii) the defense may not introduce any evidence or make any argument that the defendant was permitted to, or did, notify, under those subsections.  Not only would any such argument be legally and factually unsupportable, but by presenting methods of notification that do not apply in this case, such arguments would pose a substantial risk of confusing or misleading the jury, and thus should be prohibited under Rule 403.

IV.   The Court Should Preclude Evidence and Arguments Relating to Affirmative
      Defenses Not Properly Noticed

The government moves, out of an abundance of caution, to preclude the defense from presenting any affirmative defenses for which it has not provided notice or proffered any evidence.

A.   Legal Standard

In general, district courts have the discretion to require "a threshold showing on the part of those who assert an affirmative defense to a crime" before allowing evidence regarding such a defense to be presented to a jury.  United States v. Bailey, 444 U.S. 394,

416 (1980).  Thus, a defendant who has not raised an affirmative defense by the time for

adjudicating motions in limine may be barred from asserting such a defense at trial.  See,

e.g., United States v. Bakhtiari, 913 F.2d 1053, 1057 (2d Cir. 1990) (approving of district

court's pre-trial preclusion of attempted defense of duress or coercion); United States v.

Crown, No. 99-CR-1044, 2000 WL 709003, at *1 (S.D.N.Y. May 31, 2000) ("It is well

established that a district judge may preclude a necessity defense by granting a motion in

limine. . . .  Affirmative defenses such as necessity typically impose, at the very least, a

burden of production on the defendant."); United States v. Crowder, 325 F. Supp. 3d 131,

138 (D.D.C. 2018) (granting government's motion for pretrial notice and discovery of

advice-of-counsel defense); United States v. Gottesfeld, 313 F. Supp. 3d 360, 362 (D. Mass.

2018) ("The in limine procedure is proper to determine whether defendant's anticipated

defense is sufficient, as a matter of law, to present to the jury.").

     B.    Discussion

        The defense has not provided any notice that it intends to offer any affirmative

defense, such as justification, necessity, coercion, duress, or public authority and the

government is not aware of any viable affirmative defense.  As to Count One specifically—

acting as an illegal agent of the PRC without notice to the Attorney General, in violation of

18 U.S.C. § 951—a defense that an individual defendant falls under any of the statutory

exceptions to prohibitions on acting as an illegal agent constitutes an affirmative defense.

See 18 U.S.C. § 951(d) (listing four types of individuals not included in the definition of

"agent of a foreign government"); see also United States v. Rafiekian, 991 F.3d 529, 544

(4th Cir. 2021) (holding "legal commercial transaction" exception is an affirmative defense);

28

United States v. Duran, No. 07-CR-20999, 2008 WL 11333989, at *2 (S.D. Fla. Oct. 10, 2008) ("Section 951(d) encompasses exceptions which must be raised and proven by a defendant as affirmative defenses to the crime described in Section 951(a)").  The defendant here has not disclosed that he intends to offer such an affirmative defense, nor produced any evidence to meet his burden with respect to any such defense.

The Court therefore should prohibit the defense from presenting any of the statutory—or any other undisclosed—affirmative defenses to the jury.

V.      The Court Should Preclude Evidence and Arguments About Possible Punishments

The government moves in limine to preclude evidence and arguments regarding the punishments that the defendant may face if convicted on one or more counts at trial, except that such evidence may be offered by the government in the event the defendant testifies, thereby putting his credibility at issue.

A.      Relevant Facts

The Indictment's charges carry the following statutory maximum penalties: Count One, 18 U.S.C. § 951(a), ten years' imprisonment; Count Two, 18 U.S.C. § 1343, twenty years' imprisonment; Count Three, 18 U.S.C. § 1001(a)(3), five years' imprisonment; and Count Four, 18 U.S.C. § 1512(c)(2), twenty years' imprisonment.  Accordingly, should the jury convict on each of the counts in the Indictment, the defendant faces a theoretical statutory maximum of 55 years' imprisonment.

B.    Legal Standard

As set forth above, irrelevant evidence—meaning evidence that does not have "any tendency to make a fact more or less probable," where "the fact is of consequence in determining the action"—is not admissible.  Fed. R. Evid. 401, 402.  Even relevant evidence may be excluded if its probative value is substantially outweighed by, among other things, a danger of unfair prejudice, confusing the issues, or misleading the jury.  Fed. R. Evid. 403.

C.    Discussion

Evidence and arguments regarding the possible punishments the defendant may face if convicted should be precluded because they are irrelevant.  See Shannon v. United States, 512 U.S. 573, 579 (1994) ("Information regarding the consequences of a verdict is . . . irrelevant to the jury's task.").

Such evidence and arguments improperly "invite[] [jurors] to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion."  Id.  Indeed, jurors regularly are instructed not to consider a defendant's punishment in determining a defendant's guilt.  See generally Sand, Instruction 9-1 (2017 ed.); see also Shannon, 512 U.S. at 579 (jury "should be admonished to reach its verdict without regard to what sentence might be imposed [and] not to consider the consequences of their verdicts . . . ." (internal citation omitted)); United States v. Watts, 934 F. Supp. 2d 451, 464-65 (E.D.N.Y. 2013) ("[I]t is well-established precedent that jurors should not be informed about the possible consequences of their verdict due to the likelihood that prejudice, unfairness, and confusion . . . would result.").

For these reasons, courts routinely preclude evidence and arguments regarding the potential sentences a defendant may face, because such evidence is irrelevant, unfairly prejudicial, and outside the province of the jury.  See, e.g., United States v. Zhukov, No. 18-CR-633, Jury Instructions, ECF No. 368 at 9 (E.D.N.Y. May 28, 2021) (Komitee, J.) ("The question of possible punishment of the defendant is of no concern to the jury and should not, in any sense, enter into or influence your deliberations."); United States v. Naim, No. 13-CR-660, Docket Order (E.D.N.Y. Nov. 24, 2014) (Garaufis, J.); see also United States v. Blume, 967 F.2d 45, 49 (2d Cir. 1992) ("Federal courts usually instruct juries not to consider a verdict's consequences."); United States v. Lewis, 110 F.3d 417, 422 (7th Cir. 1997) (holding district court correctly refused to permit defendant to argue about severity of his possible punishment); United States v. DiMarzo, 80 F.3d 656, 660 (1st Cir. 1996) (district court "soundly excluded" evidence of potentially harsh sentence).  The Court similarly should preclude such evidence here, except that the government should be permitted to offer such evidence if the defendant exercises his right to testify and consequently puts his credibility at issue.

VI.    The Court Should Permit the Government to Admit Evidence Pursuant to Business Records Certifications

The government moves in limine to admit evidence pursuant to business records certifications, where such certifications previously have been produced in discovery or are produced in advance of trial.  The custodians of relevant business records have provided business records certifications that comply with the requirements of Federal Rule of Evidence 803(6).  The government has provided copies of such certifications to the defense

and notified the defense of its intent to rely upon those certifications at trial under Federal

Rule of Evidence 902(11).  See, e.g., Gov't Discovery Ltr., ECF No. 112 (July 29, 2022).

The defense has not objected to any certification the government has provided and the

government does not anticipate, based upon discussions to date with defense counsel, that the

authenticity of any business records are likely to be a subject of dispute, but the government

nonetheless makes this motion out of an abundance of caution.[7]

A.    Relevant Facts

As relevant to Count One—which charges that the defendant was acting as an

agent of the PRC government, and for which the government alleges that PRC Official-1 and

PRC Official-2 were his primary handlers—the government expects to present at trial

telephone service records associated with telephone numbers assigned to the defendant, PRC

Official-1, and PRC Official-2, including subscriber information, call history, text message

history, and other records.  The government also expects to present diplomatic visa

application documentation obtained from the U.S. Department of State for both PRC

Official-1 and PRC Official-2.  In these documents, both individuals self-identify as "Foreign

Government Officials" of the PRC and identify their employer in the United States as the

PRC Consulate.

The government also may present at trial the defendant's international travel

history from U.S. Customs and Border Protection; documents from the defendant's alien file,

---

[7]    The government does not seek a pretrial ruling as to these business records
certifications on the grounds of relevance.

including for example, his immigration filings, naturalization certificate, and other

application documents showing his country of origin as the PRC and his immigration history;

his employment records from the USMC, USAR, and NYPD; and financial records showing

international financial transactions between the defendant and persons/entities in the PRC.[8]

B.    Legal Standard

The Sixth Amendment to the United States Constitution states: "In all criminal

prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against

him." U.S. Const. amend. VI.  In considering this right, the U.S. Supreme Court has held

that admitting business records that have been authenticated by affidavit or certificate does

not violate a defendant's right to confrontation.  See Melendez-Diaz v. Massachusetts,

557 U.S. 305 (2009).  In Melendez-Diaz, the Court held that a particular affidavit prepared

by a drug analyst as part of a criminal investigation was testimonial.  Id. at 307.  The

affidavit stated that certain powder seized from the defendant was determined to be

"cocaine."  Id.  In responding to the dissent's concern that the holding would eviscerate the

usefulness of Rule 902(11), the Court explained that "[a] clerk could by affidavit authenticate

or provide a copy of an otherwise admissible record, but could not do what the analysts did

here: create a record for the sole purpose of providing evidence against a defendant."  Id. at

322-23 (emphasis in original).  The Court further explained: "Business and public records are

---

[8]    The government is in the process of obtaining certified copies of the
defendant's international travel history from U.S. Customs and Border Protection.  The
government will provide such documentation promptly to the defendant upon receipt.

generally admissible absent confrontation . . . because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial." Id. at 324.

Relying on Melendez-Diaz, the Second Circuit and at least five other circuits have concluded that certifications authenticating records are not testimonial and therefore are permissible.  See, e.g., United States v. Qualls, 613 F. App'x 25, 28 (2d Cir. 2015); United States v. Johnson, 688 F.3d 494, 504-05 (8th Cir. 2012); United States v. Yeley-Davis, 632 F.3d 673, 680-81 (10th Cir. 2011); United States v. Morgan, 505 F.3d 332, 339 (5th Cir. 2007); United States v. Ellis, 460 F.3d 920 (7th Cir. 2006); United States v. Weiland, 420 F.3d 1062, 1077 (9th Cir. 2005).  As the Seventh Circuit explained in United States v. Ellis, an authenticating certification under Rule 902(11) is "nothing more than the custodian of records . . . attesting that the submitted documents are actually records kept in the ordinary course of business" and "merely establish the existence of the procedures necessary to create a business record."  460 F.3d at 927.  It is the underlying records, not the certification, that are introduced to establish the facts at trial.

Consistent with this understanding of the confrontation right, federal law permits the authentication of business records by certification and sets forth specific requirements for their admission.  Federal Rule of Evidence 902(11) expressly permits the authentication of domestic business records by certification.  And courts in the Second Circuit have routinely applied these provisions to admit certified business records at trial. See, e.g., United States v. Komasa, 767 F.3d 151 (2d Cir. 2014).

34

C.    <u>Discussion</u>

The government should be permitted to authenticate and admit telephone records, travel records, immigration records, employment records, financial records, and other business records using certifications because it is proper under the law and promotes judicial efficiency.[9]

Admitting business records certifications from relevant entities that comply with the requirements of Federal Rule of Evidence 803(6) will spare the jury and the Court testimony from certain custodial witnesses whose testimony otherwise would be necessary to establish the authenticity of business records, eliminate unnecessary persons from the courtroom, shorten the amount of time that jurors will need to sit for trial, and reduce the number of witnesses who would need to travel to appear at trial (including ones who may reside outside New York).  Moreover, admitting business records certifications is particularly warranted given ongoing concerns about COVID-19, and helps protect the health and safety of all of the individuals in the courtroom, including court personnel, the jurors, and the parties.

---

[9]    To the extent the Court would like to review the business records certifications to ensure they satisfy the relevant requirements, the government will submit them for review.

CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court

grant these motions in advance of trial.

Dated:        Brooklyn, New York
              August 12, 2022

                                        Respectfully submitted,


                                        BREON PEACE
                                        United States Attorney
                                        Eastern District of New York
                                        271 Cadman Plaza East
                                        Brooklyn, New York 11201

                        By:          /s/
                                        _____
                                        J. Matthew Haggans
                                        Francisco J. Navarro
                                        Meredith A. Arfa
                                        Assistant United States Attorneys

                                        Scott A. Claffee
                                        Trial Attorney
                                        Counterintelligence &
                                        Export Control Section
                                        U.S. Department of Justice
                                        Special Assistant United States Attorney
                                        Eastern District of New York
                                        (718) 254-7000